UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MAXWELL T. ANDERSON

                *Plaintiff,*

   vs.

CITY OF BUFFALO,
ERIE COUNTY,
OFFICER DOMINIQUE O. DAVIS
OFFICER NIKO D. DAVIS
OFFICER MARK WALLENHURST
OFFICER ALIVIA ECK
LT. TODD MCALISTER
OFFICER MATTHEW CONSTANTINO
OFFICER JOHN DOE 1,
OFFICER JOHN DOE 2, and,
OFFICER JOHN DOE 3,

                *Defendants.*

**AMENDED COMPLAINT**

**CASE NO. 23-CV-820**

**JURY TRIAL DEMANDED**

---

Plaintiff Maxwell T. Anderson, by and through his attorneys, Tiveron Law PLLC, for his Amended Complaint against Defendants herein, state as follows:

1. At all times hereinafter mentioned, Plaintiff is a resident of the State of New York.

2. At all times hereinafter mentioned, Defendant City of Buffalo was and still is a municipal corporation created by legislative act in 1832, with its principal place of business located at 65 Niagara Square, Buffalo, New York 14202 and is vicariously liable for the negligence, carelessness and reckless actions of its agents, employees, and/or officers of the Buffalo Police Department. That Defendant City of Buffalo is also vicariously liable for the negligence,

carelessness and reckless actions of its agents, employees, and/or officers that occurred at the Holding Center.

3. At all times hereinafter mentioned, City of Buffalo Police Department (hereinafter referred to as "BPD") was and still is a Department of the City of Buffalo, created and authorized pursuant to Buffalo City Charter § 5-1(8), with its principal place of business located at 68 Court Street, Buffalo, New York 14202.

4. That Defendants BPD are vicariously liable for the negligence, carelessness and reckless actions of its agents, employees, and/or officers.

5. Upon information and belief, at all relevant times stated herein Officer Dominque O. Davis, Officer Niko D. Davis, Officer Mark Wallenhurst, Officer Alivia Eck, Lt. Todd Mcalister and Officer Matthew Constantino were natural persons residing, upon information and belief, in the County of Erie and State of New York and were employees of Defendant City of Buffalo and the Buffalo Police Department.

6. At all times hereinafter mentioned, Erie County Holding Center, was and still is a pretrial, detention facility, located at 40 Delaware Avenue, Buffalo, New York, 14202.

7. That Defendant Erie County is vicariously liable for the negligence, carelessness and reckless actions of its agents, employees, and/or officers that occurred at the Erie County Holding Center.

8. At all times hereinafter mentioned, John C. Garcia ("Garcia"), was and still is the Sheriff at the Erie County Sheriff's Office with a principal place of business located at 10 Delaware Avenue, Buffalo, New York 14202, and was and still is the Sheriff at the Erie Holding Center with a principal place of business located at 40 Delaware Avenue, Buffalo, New York 14202.

9. At all times hereinafter mentioned, Defendants Officers John Doe 1, 2, and 3 were and still are police officers of the BPD, and hold themselves out as competent officers, with sufficient knowledge, skill, and expertise as such officers in accordance with good and accepted standards.

## JURISDICTION AND VENUE

10. This is an action pursuant to Title 42 of the United States Code, Section 1983 to remedy Defendant's denial of Plaintiff's protected liberty interests and rights of law without due process of law.

11. This Court has original jurisdiction based upon the provisions of 42 U.S.C. § 1983.

12. This Court has supplemental jurisdiction over the asserted state claims pursuant to 28 U.S.C. §1367 as all of the state claims are so related to the 1983 causes of action that they form the same case or controversy under Article III of the United States Constitution.

## RELEVANT HISTORY

13. On or about August 14, 2022, Plaintiff was out in downtown Buffalo celebrating a friend's birthday.

14. At or around 2:00 a.m. Plaintiff left the bar and began crossing the street at which time he passed behind a car.

15. Upon information and belief, the driver of the car had stopped at a red light partially over the crosswalk into the intersection, and was directed by police to reverse so that he was not blocking the intersection.

16. The driver began to reverse toward Plaintiff and almost backed into him, at which point Plaintiff realized the driver was not going to stop.

17. Plaintiff used an open palmed hand, with no rings or watches on the hand, to smack on the back of the car to alert the driver that he was crossing behind him, at which time the driver stopped reversing. Plaintiff also yelled for the driver to watch where he was going.

18. Upon information and belief, there was no damage as a result of Plaintiff's contact with the car. The driver did not acknowledge or interact with the Plaintiff, other than to stop the car, and Plaintiff continued to cross the street without interruption.

19. After Plaintiff finished crossing the street he walked by a group of BPD officers. The officers did not acknowledge Plaintiff or attempt to detain him, and he continued on his way.

20. Upon information and belief, at some point while walking the next half block Plaintiff was tackled from behind, causing him to hit his head on the ground and lose consciousness for a few seconds.

21. The next thing Plaintiff was aware of, he was lying on the pavement on his stomach. Without Plaintiff's knowledge, his right hand was already behind his back and had been restrained with handcuffs. Plaintiff's left hand was trapped underneath him, and he could not identify his assailant.

22. Plaintiff proceeded to attempt to free his left hand from beneath his body and attempted to turn his head in order to see who his attacker was. Once he realized he was being held down by a police officer who was attempting to finish handcuffing him Plaintiff ceased struggling but immediately began to ask the officer why he was being arrested. He received no response.

23. The officer searched Plaintiff without any evidence of criminal activity while he was still on the ground and found a small bag of psilocybin mushrooms in Plaintiff's pocket. Only after searching and confiscating the mushrooms did the officer pull him off the ground. Plaintiff continued to ask why he was being arrested, to which the officer and others who joined them

{H3952117.1}     4

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

continued to ignore.

24. After this, Plaintiff was brought to and put in the back of a police car, during which time he continued to ask multiple times why he was being arrested. He was only told once when he was in the police car "you know why," which is presumed to refer to the incident with the car.

25. Plaintiff did not fit in the police car and the handcuffs were initially so tight and Plaintiff was in such pain he begged the officers multiple times to loosen them. Plaintiff had marks on his wrist for over two weeks from the handcuffs.

26. Plaintiff was taken to the Erie County Holding Center where he was booked and fingerprinted. During this process Plaintiff asked multiple times if he could have his phone call. He was told "you'll get it when you get it." When this process was finished, Plaintiff was taken to a cell where he was detained from approximately 3a.m. through 9a.m. without any medical checkup due to his injuries. Throughout this time, Plaintiff asked numerous times for his phone call and was ignored or denied access.

27. At or around 7:30 a.m. Plaintiff was told the phones were turned off and he should have already gotten his phone call. Upon information and belief, an officer called Plaintiff's mother and told him her son had been arrested because "he had gotten into a little altercation on Chippewa." Plaintiff's mother was told there was an arraignment at 9:30 a.m. but was not told whether her presence was necessary and gave her no further information.

28. Upon information and belief, at some point before the arraignment, Plaintiff was approached by an Erie County Attorney, who asked him for his personal information. Plaintiff communicated that he needed medical attention for his injuries and asked to see a doctor. His request was denied.

29. When Plaintiff was taken from his cell to the arraignment, he could not walk

{H3952117.1}                                                                                                                                          5

Tiveron Law, PLLC
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

properly due to leg and ankle injuries.

30. Upon information and belief, at the arraignment, Plaintiff was told he was being charged with two felonies, and that the driver of the car had filed for a restraining order against him. The felony charges were not explained, Plaintiff was not given the chance to speak to an attorney on his behalf, and he was told to return on August 9, 2022, for sentencing.

31. Following the arraignment, Plaintiff's mother took him directly to the hospital.

32. A Notice of Claim was properly served on the City of Buffalo and Erie County on November 8, 2022. The Notice of Claim and Affidavit of service are attached, as required by GML 50-e.

## RELEVANT INJURIES

33. Upon information and belief, Plaintiff suffered multiple injuries as a result of being tackled by the unidentified police officer.

34. Plaintiff suffered scrapes to his knees and thighs, his toe was swollen for a week and he was later diagnosed with trauma induced arthritis in his toe.

35. Plaintiff suffered a concussion, which worsened into post-concussion syndrome, likely due to lack of prompt medical attention. Plaintiff now receives nerve block injections in his neck and trigger point injections in his back to combat the pain and discomfort caused by the severe head trauma.

36. Plaintiff, suffered a papilledema (eye injury), dislocation of the jaw, and neck and back injuries to both the muscle and soft tissue.

37. Upon information and belief, Plaintiff's previous shoulder, knee, and ankle injuries from playing football were re-aggravated as a result of the impact of being tackled and these injuries prevented his return to football in college as he had planned.

38. Plaintiff's injuries include, but are not limited to those specified in his complaint.

## AS AND FOR A FIRST CAUSE OF ACTION:
## 42 U.S.C. § 1983 – FOURTH AMENDMENT EXCESSIVE FORCE

39. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "38" above as if more fully set forth herein.

40. Officers John Doe 1, 2, and 3 ("Doe Officers.") were operating as agents of the Buffalo Police Department, an arm of the City of Buffalo and under the color of state law.

41. The Doe Officers used excessive force against the Plaintiff in violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution.

42. The Doe Officers had no reason to believe any criminal activity had occurred at the time they tackled Plaintiff to the ground resulting in multiple injuries.

43. Doe Officers could observe no damage to the car before they tackled Plaintiff, therefore there was no probable cause on those grounds. Doe Officers were not aware of Plaintiff being in possession of any contraband before excessive force was used, therefore there was no probable cause.

44. Doe Officers did not request Plaintiff to stop, or attempt to ask him any questions about the events before they tackled him to the ground causing his injuries.

45. Instead of engaging with Plaintiff, Doe Officers did intentionally tackle Plaintiff to the ground in an excessively violent manner which was a clear use of excessive force under the circumstances. Additionally, Plaintiff made no efforts to flee from Doe Officers, or to resist arrest. Plaintiff's brief struggle was for the purpose of identifying his assailant and upon realization he was detained by law enforcement, he immediately cooperated.

{H3952117.1}   7

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

46. Plaintiff committed no acts which were threatening or violent in nature. Plaintiff did not attempt to flee or exhibit any behavior that would justify the Doe Officers to tackle him to the ground. Plaintiff had walked past the same Doe Officers a few moments before and they made no attempt to stop him, ask him questions, or detain him in any fashion.

47. Tackling the Plaintiff to the ground and causing him multiple injuries in this situation was objectively unreasonable and a reasonable officer on the scene would have known that the force used was excessive under the circumstances.

48. Doe Defendants violated their duty to provide and ensure the safety, protection and well-being of the Plaintiff while he was in their presence, custody, or control.

49. Doe Officers under the color of state law, violated Plaintiff's Constitutional rights to be safe and secure in his person by using excessive force that was objectively unreasonable under the circumstances.

50. As a result of Doe Officers' actions, Plaintiff was severely injured at a detriment to his quality of life.

51. The resulting extensive injuries suffered by Plaintiff were a result of Doe Officers' violation of Plaintiff's constitutional rights, inflicted without cause, provocation, or negligence on the part of the Plaintiff.

52. For the foregoing reasons, Doe Officers' actions are in direct violation of the provisions of 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION:
## MONELL MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 FOR FAILURE TO TRAIN AND POLICY/CUSTOM OF USING EXCESSIVE FORCE

53. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "52" above as if more fully set forth herein.

54. At all relevant time Defendants City of Buffalo held themselves out as a competent municipality, with agents, according to, and employees with sufficient knowledge, skill and expertise to act according to public policy with the safety of citizens, including Plaintiff, a priority in accordance with good and accepted standards.

55. At all relevant time Defendants City of Buffalo had a duty to sufficiently hire, train and retain personnel so as to sufficiently disciple, supervise, and put into effect appropriate rules relating to the duties, behavior, and activities of their servants, employees, personnel, and police officers.

56. At all relevant times, Defendants City of Buffalo maintained a custom, practice, and/or policy of including failure to train, promotion of a harmful policy or custom of using excessive force to conduct an arrest, negligent training, and retention.

57. City of Buffalo had reason to know about the unlawful actions of their police officers. Since 2006, there have been fifteen (15) documented cases of police excessive use of force in Buffalo according to the Buffalo media (WKBW). In 2014, John Willet was slapped and kicked while he laid on the ground. In 2017, Wardel Davis was punched in the face by a Buffalo Police Officer. In 2019, Devin Ford was pushed into a car and assaulted by a baton by a Buffalo Police Offer which was documented by the local media. In 2019, a Sherriff's deputy struck Nicholas Belsito in the head with his baton. In 2020, Quentin Suttles was punched in the head repeatedly during an arrest by Buffalo Police Officers. These incidents have brought the ongoing problem of use of excessive force to Defendant City of Buffalo's attention.

58. Despite these previous events, the City of Buffalo did not take adequate steps to provide proper training and guidance on excessive force, as evidenced by the completely

unnecessary and unjustified takedown of Plaintiff without any probable cause of criminal activity, and without attempting to de-escalate and speak to the Plaintiff before tackling him from behind.

59. The City of Buffalo knew to a moral certainty that its Police Officers will confront a situation where there is suspicion of criminal activity and they needed to make a difficult choice of whether to immediately subdue the suspect, or use force to subdue the subject. This choice can be better handled with proper training is de-escalation and other standards of when using force to subdue a subject is appropriate. By choosing force when not appropriate, this situation will frequently cause the Police Officer to violate a citizen's Fourth Amendment rights.

60. The City of Buffalo didn't adequately train their Police Officers on how to engage with a suspect in a situation where force is neither necessary nor advised. As a result of this failure of training and establishing appropriate policies and customs, Plaintiff was subjected to an unjustified aggressive takedown which caused his injuries as well as the deprivation of his Fourth Amendment rights.

61. Their policies, customs, and/or practices allowed Doe Officers to deprive Plaintiff of his rights under both federal and state law, when they tackled him to the ground in order to conduct an arrest, resulting in serious injury suffered by Plaintiff.

62. As a result of Defendants' actions, Plaintiff was caused to suffer severe injury and damage to both his person, and his quality of life and additional citizens will likely suffer such deprivations if the City of Buffalo's training deficiencies are allowed to continue.

### AS AND FOR A THIRD CAUSE OF ACTION:
### 42 U.S.C. § 1983 – EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

63. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "62" above as if more fully set forth therein"

64. At all relevant times, Officers Dominique O. Davis, Niko D. Davis, Mark Wallenhurst, Alivia Eck, Matthew Constantino and Lt. Todd McAliser ("Defendant Officers") displayed deliberate indifference to Plaintiff by failing to provide necessary medical treatment he required as a result of the actions taken by the other Defendants which resulted in his concussion and other injuries.

65. Upon information and belief, Defendant Officers knew that Plaintiff had suffered a completely unprovoked takedown at their hands, and that as a result displayed signs of a concussion. Defendant Officers displayed deliberate indifference to Plaintiff's medical needs by not providing prompt medical attention due to his concussive signs, and failure to inform the Holding Center that Plaintiff required medical attention due to a possible concussion.

66. Defendant Officers were present when Plaintiff hit his head on the hard cement and "blacked out" for a few moments. Defendant Officers also watched Plaintiff regain consciousness and display confusion and look around to see who had tackled him from behind. These circumstances created a serious medical need to have Plaintiff evaluated for a concussion and head trauma, and the Defendant Officers knew of Plaintiff's need for medical attention. Despite their knowledge, Defendant Officers provided no medical attention to Plaintiff, and failed to advise the Holding Center staff about the concussion, concussive signs, and serious need for medical attention. This deliberate indifference to the medical needs of the Plaintiff amounted to a violation of his Eighth Amendment rights under the Constitution.

67. During said time, Defendant employees who were acting under the color of state law wrongfully detained and wrongfully imprisoned Plaintiff from 3 a.m. until 9 a.m., denied Plaintiff medical attention, isolated him, and denied him his rightful access to a phone call while in custody in violation of his Eighth Amendment rights. Plaintiff's mother only received information of her

{H3952117.1}                                                                                                                                                11

**Tiveron Law, PLLC**
2410 NORTH FOREST ROAD | SUITE 301 | AMHERST, NEW YORK 14068
Phone: 716.636.7600 | Toll Free: 800.636.5255 | Fax: 716.636.7606 | www.tiveronlaw.com

son's whereabouts when an officer called her at or around 7:30 a.m. At which time, Plaintiff was not given the opportunity to speak with her himself and was not given the option for release before he was escorted to his arraignment nearly two hours later.

68. Upon information and belief, when Plaintiff was finally released from Defendant's custody, he was unable to walk properly as a result of his injuries.

69. Immediately upon the conclusion of Plaintiff's arraignment his mother took him straight to the hospital.

70. Plaintiff's injuries as addressed above were sufficiently serious and warranted immediate attention as detailed by his inability to properly walk, his concussive signs and symptoms, and other outward signs of injury.

71. Failure to provide medical attention to someone who is suffering from a concussion can result degeneration and extreme pain, and in the case of Plaintiff led to post-concussion syndrome due to a lack of prompt medical attentions. This inaction has led to continuous pain and discomfort and the needs for continuous injections in his neck and other locations to properly manage his ongoing pain.

72. Employees of the Holding Center were aware that Plaintiff had been tackled to the ground by the City of Buffalo Police Officers. Plaintiff also displayed outward signs of a concussion which a reasonable employee would infer that a substantial risk of serious harm exists.

73. Upon information and belief, employees of the Holding Center did infer that a substantial risk of harm to Plaintiff existed based on his concussive symptoms but were deliberately indifference to that need.

74. Plaintiff also requested an Erie County Attorney to provide him with medical attention to his injuries, but that request was denied and amounted to deliberate indifference to his medical needs.

75. As a direct result of the Defendant's carelessness, negligence and deliberate indifference toward Plaintiff's injuries and failure to allow Plaintiff access to medical attention or communication with the outside world, and without any fault or negligence of Plaintiff contributing thereto, Plaintiff suffered debilitating, painful and permanent injuries, and damage to both his person, and his quality of life.

## AS AND FOR A FOURTH CAUSE OF ACTION: BATTERY – DOE OFFICERS AND CITY OF BUFFALO

76. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "75" above as if more fully set forth herein.

77. The City of Buffalo is vicariously liable for battery and assault committed by its officers.

78. Doe Officers committed a tortious assault against Plaintiff when they tackled him to the ground from behind without provocation and caused him numerous injuries.

79. Doe Officers did make a bodily contact with Plaintiff where they tackled him and restrained him.

80. Doe Officers intended to tackle Plaintiff to the ground despite the absence of provocation.

81. The intentional bodily contact with Plaintiff made by Doe Officers was offensive in nature where it was made without Plaintiff's consent, where he was tackled without warning from behind in a manner so forceful and violent such as to cause Plaintiff to lose consciousness when his head made contact with the concrete, and resulted in lasting physical impairment.

## AS AND FOR A FIFTH CAUSE OF ACTION:
## NEGLIGENCE

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "81" above as if more fully set forth herein.

83. The County and City Defendants are liable for common law negligence by agents of the Holding Center.

84. The Defendant City of Buffalo is vicariously liable for the employees of the Holding Center's actions under the theory of respondeat superior under state law.

85. The Holding Center failed to provide Plaintiff with necessary medical attention, despite the obvious need and Plaintiff's request prior to arraignment.

86. Plaintiff was in the custody of agents at the Holding Center and was not permitted to leave. As a result of custody of the Plaintiff, the employees of the Holding Center and the Defendants had a duty to provide proper medical attention to Plaintiff but they failed to do so.

87. The delay in medical treatment has caused irreparable harm to Plaintiff and resulted in permanent injuries which could have otherwise been avoided if Defendant's agents had provided the proper care to Plaintiff while in their care.

## AS AND FOR A SIXTH CAUSE OF ACTION:
## FALSE ARREST/FALSE IMPRISONMENT

88. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "87" above as if more fully set forth herein

89. The Doe Officers intended to confine the Plaintiff when they tackled him from behind without any indication of criminal activity or suspicion a crime had been committed.

90. The Plaintiff became conscious of his confinement when he regained consciousness after suffering a concussion from having his head slammed into the concrete.

91. Plaintiff did not consent to the confinement that was carried out by the Doe Officers.

92. Doe Officer's arrest of Plaintiff was not otherwise privileged as they had no indication that Plaintiff had engaged in any criminal activity.

93. The employees of the Holding Center intended to confine the Plaintiff by keeping him in a cell for over six hours without any phone call or medical attention.

94. Plaintiff did not intend to be confined and repeatedly requested access to a phone call so he could end the confinement.

95. Plaintiff's confinement was not otherwise privileged as there was no indication of any criminal conduct before he was seized, detained, and arrested. Plaintiff's confinement also continued and was not privileged as Plaintiff needed medical attention but was not provided any and was inappropriately confined instead of receiving medical treatment.

**WHEREFORE**, Plaintiff demands judgment against the defendants on each cause of action in an amount which exceeds the jurisdictional limits of all other courts which might otherwise have jurisdiction and requests the costs and disbursements and such other and further relief as to the Court may seem just and proper.

DATED:   October 11, 2024
         Amherst, New York

> */s/Steven M. Cohen, Esq.*
> Steven M. Cohen, Esq.
> **TIVERON LAW, PLLC**
> *Attorneys for Plaintiff*
> 2410 North Forest Road, Suite 301
> Amherst, New York 14068
> (716) 636-7600
> scohen@tiveronlaw.com